UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRADLEY E. CALDWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 1:13-cv-1003-SEB-DML |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

# Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. (Dkt. 9) As addressed below, the Magistrate Judge recommends that the District Judge AFFIRM the decision of the Commissioner of the Social Security Administration that plaintiff Bradley E. Caldwell is not disabled.

## Introduction

Plaintiff Bradley E. Caldwell applied in June 2010 for Disability Insurance Benefits (DIB) and Supplemental Security Income disability benefits (SSI) under Titles II and XVI, respectively, of the Social Security Act, alleging that he has been disabled since August 31, 2007. Acting for the Commissioner of the Social Security Administration following a hearing on December 1, 2011, administrative law judge William M. Manico issued a decision on March 27, 2012, in which he found that Mr.

Caldwell is not disabled. The Appeals Council denied review of the ALJ's decision on April 23, 2013, rendering the ALJ's decision for the Commissioner final. Mr. Caldwell timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Mr. Caldwell contends that the ALJ erroneously evaluated the severity of his mental impairments and their effect on his functioning. He argues that the evidence established that his mental impairments were severe enough to meet or medically equal Listing 12.04. If the court does not reverse the ALJ's determination that no listing was met, Mr. Caldwell then argues that the ALJ's credibility analysis was flawed, which resulted in an erroneous determination of his residual functional capacity. Finally, he argues that the ALJ did not properly evaluate whether Mr. Caldwell could perform his past relevant work as a construction worker, and therefore erred at step four in finding that he was capable of performing that work.

## Standard for Proving Disability

To prove disability, a claimant must show that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB benefits); 42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[1] Mr.

---

[1] Two programs of disability benefits are available under the Social Security Act: DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability

Caldwell is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the

---

benefits under Title XVI for uninsured individuals who meet income and resources criteria, 42 U.S.C. § 1381 *et seq.* The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits. For SSI benefits, material identical provisions appear in Title XVI and generally at 20 C.F.R. § 416.901 *et seq.*

most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his vocational profile (age, work experience, and education) and his RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### **Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a

scintilla of evidentiary support, but does not demand a preponderance of the evidence.  *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability.  *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004).  The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions.  *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Mr. Caldwell was born in October 1967 and was 39 years old at the alleged onset of his disability in August 2007.  He was 43 years old at the time of the ALJ's decision denying disability benefits.  Mr. Caldwell's work history included mostly roofing and construction work.  Most recently, in 2006, he worked full time for about one year for a company that restored homes after fire damage.

At step one, the ALJ determined that although Mr. Caldwell had worked since the alleged onset of disability, the work was not at a level constituting substantial gainful activity.  At step two, he identified affective disorder and personality disorder as severe impairments and, at step three, determined that their severity did not satisfy Listing 12.04 (affective disorders) or Listing 12.08 (personality disorders).  The ALJ next determined Mr. Caldwell's residual

functional capacity (RFC).  He decided that Mr. Caldwell is capable of performing semi-skilled work and at the full range of all exertional levels from sedentary to heavy, but that contact with others must be "routine, superficial, and incidental to the work performed."  (R. 20).  With this RFC and based on Mr. Caldwell's testimony and the testimony of a vocational expert, the ALJ determined that Mr. Caldwell is capable of performing his past relevant work as a construction worker as "actually and generally performed."  Thus, the ALJ decided at step four that Mr. Caldwell is not disabled.  The ALJ did not reach step five.

## II. Substantial evidence supports the ALJ's step three decision and RFC determination.

Mr. Caldwell's assertions of error regarding the ALJ's step three decision that no listings were met and the ALJ's assessment of Mr. Caldwell's credibility and RFC are grounded almost entirely on one argument.  He contends that low GAF scores reflected in his mental health records (a) prove that he met the B criteria of listing 12.04 (Dkt. 20 at p. 12); (b) prove that the ALJ inappropriately "played doctor" and ignored "GAF determinations below 50 which proved disability" (*Id.* at p. 13); and (c) prove that his "allegations of total disability" were credible.  (*Id.* at p. 18).

Mr. Caldwell otherwise wholly ignores the ALJ's discussion and evaluation of (a) the contents of his mental health records, including reports from mental status examinations and therapy appointments and (b) opinions by agency professionals on whether Mr. Caldwell's mental impairments met or medically equaled a listing and the impact of his mental impairments on work functioning.

A. **<u>The ALJ adequately analyzed the relevant listings.</u>**

The ALJ evaluated Mr. Caldwell's mental impairments against listings 12.04 (affective disorders) and 12.08 (personality disorders). Each of these listings requires, among other things, that the claimant's mental condition manifest itself at a level of severity measured by the same factors, called the "B" criteria. A claimant whose mental impairment is not manifested at a level of severity tested by the B criteria may then look to the "C" criteria for a particular listing. Mr. Caldwell does not claim that he met the C criteria, nor does he challenge the ALJ's decision that he did not meet them. As noted above, Mr. Caldwell does not attempt to show error in the ALJ's evaluation of the B criteria, except to argue that his low GAF scores "proved" disability. (Dkt. 20 at p. 12).

The ALJ's step three decision, however, is supported by substantial evidence. To satisfy the B criteria, Mr. Caldwell's mental disorders must result in at least two of the following:

Marked restrictions of activities of daily living;

Marked difficulties in maintaining social functioning;

Marked difficulties in maintaining concentration, persistence, or pace (CPP);

Repeated episodes of decompensation, each of extended duration.

In general, a "marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, effectively, and on a sustained basis." Listing 12.00(C).

A claimant is markedly limited in activities of daily living if his mental impairments cause "serious" difficulty in doing things such as cleaning, shopping, cooking, maintaining a residence, self-grooming and hygiene "on a consistent, useful, routine basis, or without undue interruptions and distractions." Listing 12.00(C)(1). Social functioning examines how the claimant gets along with others, including family members, friends, neighbors, co-workers, shopkeepers, and strangers. Marked impairment may be shown by the claimant's inability to act "independently, appropriately, and on a sustained basis" with others, evidenced by a history of altercations, firings, social isolation, or similar dysfunction, as opposed to "cooperative" behavior with others and a sense of social maturity. Listing 12.00(C)(2). CPP refers to a claimant's abilities to focus and concentrate long enough to complete tasks. Marked impairment may be shown where a claimant cannot sustain a level of concentration to complete even simple tasks without extra supervision or assistance. Listing 12.00(C)(3).

The court describes some of the evidence analyzed by the ALJ in support of his decision that the B criteria were not met.

As to Mr. Caldwell's daily living activities, the ALJ concluded that Mr. Conrad is only mildly limited because he is able to care for a pet, prepare simple meals, complete household chores, shop, manage his finances, and follow written and spoken instructions. (R. 17-18).

As for difficulties in social functioning, the evidence was mixed. The ALJ concluded that on the whole, Mr. Caldwell suffered moderately in this area. He

noted that Mr. Caldwell has had serious "issues" with socializing and responding appropriately to criticism, and prefers not to be in groups in people. He addressed that Mr. Caldwell had been diagnosed with intermittent explosive disorder and reported to mental health professionals his difficulties in accepting criticism, a history of altercations at work, his fears of people and crowds, and his tendency to distrust others. He also considered that Mr. Caldwell returned to school in 2010 and began taking college-level classes at Ivy Tech. In addition, treatment notes from August and September 2011 indicated that Mr. Caldwell was making measurable progress with his goal to decrease anger, had reported greater awareness of his emotions, and was able to identify an irrational thought process and "redirect/reframe" his thoughts using the coping mechanisms he had learned through treatment. (R. 23-24).

With respect to CPP, the ALJ reasoned that on the whole the evidence indicated that Mr. Caldwell suffers only mildly in this area. Mr. Caldwell demonstrated in mental status examinations the abilities to concentrate, memorize information, perform calculations, and understand abstract concepts. In addition, Mr. Caldwell was taking college-level classes and juggled taking classes, doing homework, and participating in home life with his live-in girlfriend. (R. 23-24).

As to the last B factor, the ALJ found that Mr. Caldwell had not suffered any episodes of decompensation since the alleged onset of his disability.

The above findings of the absence of at least two marked limitations or repeated episodes of decompensation are supported by the opinion of state agency

9

psychologist Kari Kennedy, who completed a Psychiatric Review Technique form dated October 10, 2010, and who reached the same qualitative conclusions regarding the B criteria. Mr. Caldwell argues that Dr. Kennedy's opinion was too old to be considered reliable and a new medical opinion whether a listing was met or medically equaled was required. But Mr. Caldwell has not pointed to any medical evidence that post-dates Dr. Kennedy's opinion *and* that alters the overall substance of the evidence regarding Mr. Caldwell's mental functioning. Although Dr. Kennedy could not have evaluated the records of Mr. Caldwell's therapy sessions in 2011, Mr. Caldwell does not show anything within those records that is materially different from the evidence that Dr. Kennedy did review (which included the August 2010 GAF score of 35) or that evinces deterioration after October 2010 in Mr. Caldwell's daily living, social functioning, or CPP. Further, the ALJ reasonably found that the 2011 records demonstrated steady improvement, and not deterioration, in Mr. Caldwell's mental health functioning. Under these circumstances, the court cannot find that the ALJ was required to summon a psychologist to the hearing for an updated medical opinion whether a mental health listing was met or medically equaled.

### B. The ALJ adequately addressed the GAF scores.

The ALJ also addressed GAF scores from Mr. Caldwell's mental status examinations, which ranged from scores of 45 and 49 in 2007, 53 in September 2008, 35 from a mental status examination in August 2010, and 62 from a mental status examination in September 2010. GAF stands for Global Assessment of

Functioning and is a scale developed by the American Psychiatric Association and used by mental health doctors and clinicians to rate a person's "global" functioning at a particular moment in time and to devise a plan for appropriate treatment.[2] In general, the ALJ discounted the significance of any of the GAF scores because a GAF score is designed to capture a person's functioning at the "snapshot" in time that his mental health is being assessed and is not in itself a longitudinal evaluation of one's functioning. The ALJ noted that the scores in the 40s reflected particular social and financial stressors that Mr. Caldwell reported to his evaluators at the time. Those included divorce, unemployment, and financial strain. With respect to the 35 score assigned by a nurse practitioner, the ALJ also found that it was not consistent with the mental status examination that produced the score. In that examination, Mr. Caldwell reported that he lived independently with a

---

[2] The GAF score has been phased out in the American Psychiatric Association's 2013 release of DSM-5 (Diagnostic and Statistical Manual of Mental Disorders), which replaced the previous edition known as DSM-IV-TR. As provided in the DSM-IV-TR, the GAF scale for scores in the 30s to 60s represent the following:

  31-40: Some impairment in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) *or* major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed adult avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)

  41-50 Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) *or* any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work)

  51-60 Moderate symptoms (e.g., flat affect and circumlocutory speed, occasional panic attacks) *or* moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)

  61-70 Some mild symptoms (e.g., depressed mood and mild insomnia) *or* some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.

girlfriend and was improving his education and planning to go back to school and take college courses (which he did). Moreover, as the ALJ noted, at a different mental status examination one month later, the psychologist assigned a GAF score of 62.

Further, though Mr. Caldwell insists that clinicians at Meridian Services continued to assess that his functioning was commensurate with a GAF score of 35 from the time of the August 2010 evaluation and continuously through 2011, that is not an accurate description of the administrative record. The 35 GAF score was assigned once, in connection with a mental status examination that Mr. Caldwell underwent at Meridian Services on August 27, 2010. The later records from Meridian Services describing Mr. Caldwell's therapy sessions do not evaluate GAF or assign a new 35 GAF score at each session. Rather, those later records simply record as part of Mr. Caldwell's medical history the results of his initial mental status examination on August 27, 2010, including the GAF score assigned at that examination.

The court finds no error requiring remand based on the existence of low GAF scores in the administrative record, for several reasons. First, the GAF scale does not directly correlate with the severity requirements under the SSA's mental health listings. Second, the ALJ rationally explained why he discounted the value of the various GAF scores in analyzing Mr. Caldwell's mental impairments. Third, the ALJ adequately addressed Mr. Caldwell's overall mental health behaviors and assessments as reflected in the longitudinal record and as they specifically

correlated with the B factors in the mental health listings. *See Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010); *Wilkins v. Barnhart,* 69 Fed. Appx. 775 at *4 (7th Cir. 2003) (cited by *Denton*) (ALJ was not required to mention a GAF score of 40 because GAF score is designed to influence treatment decisions and not to measure disability under the Social Security Act).

C. **The ALJ's step three decision is supported by substantial evidence.**

In sum, Dr. Kennedy's expert opinion and the ALJ's analysis of the evidence pertinent to the four B factors (including his discussion of GAF scores) are substantial evidence supporting the ALJ's decision at step three that Mr. Caldwell is not presumptively disabled by his mental impairments. The court may not reweigh the evidence, and Mr. Caldwell cannot point to any line of evidence that the ALJ failed to consider that decidedly detracts from his findings. *See Jones v. Astrue,* 623 F.3d 1155, 1162 (7th Cir. 2010) (ALJ is not required to discuss every piece of evidence but is "prohibited only from ignoring an entire line of evidence that supports a finding of disability"); *Filus v. Astrue,* 694 F.3d 863, 867 (7th Cir. 2012) (ALJ did not err in accepting opinions from state agency physicians that no listings were met or medically equaled where "no other physician contradicted these two opinions"); *Ribaudo v. Barnhart,* 458 F.3d 580, 584 (7th Cir. 2006) (Disability Determination and Transmittal forms filled out by non-examining agency experts are all that is required to support a step three decision so long as "there is no contradictory evidence in the record").

### D. <u>Mr. Caldwell has not shown error in the ALJ's RFC or credibility determination.</u>

Mr. Caldwell's attack on the RFC determination and the ALJ's negative credibility finding also are based on the ALJ's alleged failure to consider the GAF scores. Mr. Caldwell contends that the RFC is erroneous because the ALJ failed to consider the GAFs 50 and below and those scores "fully corroborated the claimant's allegations of total disability." (Dkt. 20 at p. 18). The court's earlier discussion regarding GAF scores in connection with the ALJ's step three decision disposes of this argument. As explained there, the ALJ did not ignore the GAF scores. Rather, the ALJ discounted their worth and he explained why. His explanations have reasoned support.

Mr. Caldwell makes a second argument to attack the ALJ's credibility determination. He asserts that the ALJ committed legal error because the ALJ's decision includes a statement that the ALJ first determined an appropriate RFC and then rejected as not credible any information inconsistent with that RFC. The Seventh Circuit (and this court) have constantly reminded ALJs that this boilerplate statement found in virtually every ALJ disability decision is both illogical and inconsistent with the regulations. The credibility of a claimant's description of the ways his functioning is affected by his impairments or medical treatment for those impairments must be evaluated as part of the process in deciding an RFC. An ALJ's mere inclusion of the boilerplate in his written decision is not, however, grounds for remand. The issue is whether the ALJ gave logical reasons for discounting the claimant's credibility. *Filus v. Astrue,* 694 F.3d 863, 868

(7th Cir. 2012) (ALJ's use of oft-repeated boilerplate that he found the claimant not credible "to the extent" that his complaints were not consistent with the RFC is not grounds for remand so long as the decision otherwise reflects an appropriate assessment of the claimant's credibility).

Mr. Caldwell does not attempt to show that the ALJ's credibility decision lacks evidentiary support. Moreover, the ALJ believed that Mr. Caldwell's mental impairments needed accommodation. The RFC includes a limitation tied to Mr. Caldwell's deficiencies in social functioning by limiting him to work "where contact with others is routine, superficial, and incidental to the work performed." (R. 20).

The court may not reweigh the evidence. Mr. Caldwell has not demonstrated that the ALJ was required to determine that Mr. Caldwell is completely unable to interact with coworkers or supervisors and thus cannot hold a job. The ALJ's credibility evaluation is not patently erroneous and he supported the RFC with substantial evidence.

### III. The ALJ's step four decision that Mr. Caldwell can perform his past relevant work is supported by substantial evidence.

Mr. Caldwell's final assertion of error is that the ALJ did not properly evaluate the demands of his past relevant work in the construction industry and therefore could not properly conclude that Mr. Caldwell is capable of performing that work. He asserts that the ALJ "ignored the requirements for mental and social functioning." (Dkt. 20 at 23). Mr. Caldwell's argument is not supported by the record. The ALJ included in his hypothetical to the vocational expert the limitations that the ALJ had found were appropriate to accommodate the social

15

functioning difficulties stemming from Mr. Caldwell's mental impairments. The VE opined that the job of construction worker, both as Mr. Caldwell performed it and as it is *generally performed,* fits that RFC. Thus, even if the ALJ did not gather sufficient evidence from Mr. Caldwell to determine whether his specific construction work had involved contact with others that is "routine, superficial, and incidental," remand is not required. It is not necessary that Mr. Caldwell is able to perform his past relevant work in the manner he had performed it *and* in the manner it is generally performed in the national economy. If he can do either, then he is not disabled. Social Security Ruling 82-61; *Getch v. Astrue,* 539 F.3d 473, 482 (7th Cir. 2008) (even if the functional demands of the claimant's former job are greater than his capability, if he can perform the demands of that job as it is generally performed, he is not disabled). The vocational expert's testimony, upon which the ALJ explicitly relied, provides substantial evidence supporting the ALJ's step four determination that Mr. Caldwell could perform his past relevant work.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge AFFIRM the Commissioner's decision. Any objections to this Report and Recommendation must be filed in accordance with 28 § U.S.C. 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

**IT IS SO RECOMMENDED.**

Date: 08/05/2014

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov